# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                      'O'

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Lisa Gonzalez | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Dale Fiola | Joseph Marra, III<br>Timothy Hix |

**Proceedings:**   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF GERMAN SANDOVAL (Dkt. 63, filed Jan. 21, 2015)

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFF FERNANDO LAVIN (Dkt. 64, filed Jan. 21, 2015)

## I.   INTRODUCTION

On October 7, 2013, plaintiffs Fernando Lavin and German Sandoval filed this action against United Technologies Corporation ("UTC") and Goodrich Corporation, doing business as UTC Aerospace Systems ("Goodrich") in Los Angeles County Superior Court. Dkt. 1.[1] Defendants subsequently removed the action to this Court. Id. On September 23, 2014, plaintiffs filed the operative First Amended Complaint ("FAC"). Dkt. 30.

---

[1] Both plaintiffs originally named Michael Zanutto as a defendant. However, Zanutto has since been dismissed from the case entirely. Dkt. 27. Additionally, Sandoval—but not Lavin—has dismissed UTC as a defendant. Mot. Summ. J. Sandoval at 2 n.2 (citing Sandoval Depo. 8:15-19).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

  Lavin asserts the following claims: (1) wrongful termination in violation of public policy; (2) retaliation in violation of public policy; (3) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq.; (4) violation of the California Family Rights Act ("CFRA"), Cal. Gov. Code § 12945.2; and (5) disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code §12900, et seq.  See generally FAC.  Sandoval asserts the following claims: (1) wrongful termination in violation of public policy; (2) retaliation in violation of public policy; (3) violation of the FMLA; and (4) violation of the CFRA.  Id.

  On January 21, 2015, defendants filed motions for summary judgment, or in the alternative, partial summary judgment, against each plaintiff.  Dkts. 63, 64.  On February 1, 2015, plaintiffs filed separate oppositions.  Dkts. 71, 72.  Defendants replied on February 9, 2015.  Dkts. 77, 78.[2]  On February 23, 2015, the Court held a hearing on the instant motions.  After considering the parties' arguments, the Court **GRANTS IN PART** and **DENIES IN PART** the motions, as set forth below.[3]

## II. BACKGROUND

### A. Background on Defendants

#### 1. Defendants' Business Activities

  Defendant Goodrich designs, manufactures, and services systems and components for commercial, regional, business, and military aircraft, helicopters, and other platforms. Brandt Decl. ¶ 3.[4]  Lavin and Sandoval were both employed in one of the two lines of

---

[2]All parties have also filed numerous evidentiary objections.  The Court rules on these objections only to the extent it relies on the objected-to evidence.

[3]To protect proprietary business information, portions of the briefing and record were filed under seal.  This redacted version of the Court's order omits references to confidential information included in a version produced under seal.

[4] Stephen Brandt ("Brandt") has been employed by Goodrich in various capacities since 1996.  Brandt Decl. ¶ 2.  Brandt served as Manager of Human Resources

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|-------------------------|------|-------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

business at Goodrich's Santa Fe Springs Facility, the details of which are confidential. The product Lavin and Sandoval worked on is manufactured pursuant to a subcontract with a government contractor.

Defendant UTC researches, develops, and manufactures high-technology products in numerous areas including aircraft engines and helicopters. Brandt Decl. ¶ 8. UTC acquired Goodrich in July 2012. Id. Goodrich remained a separate entity after the acquisition and now does business as UTC Aerospace Systems. Id.

## 2.   Goodrich's Employment Policies

As set forth in its Employee Handbook ("Handbook"), Goodrich maintains policies against unlawful discrimination and retaliation on the basis of protected characteristics, and requires all employees to report any activities thought to violate any law, regulation, or company policy. DSUFL ¶ 2; LSGD ¶ 2. Goodrich has official "open communications" / "open-door" policies and maintains written protocols for internal incident reporting if an employee believes he is experiencing discrimination, harassment, or retaliation. DSUFL ¶ 3; LSGD ¶ 3. Concerned employees may also contact their manager, Human Resources, or a toll-free Goodrich Helpline. Id.

The Handbook sets forth Goodrich's attendance policies. At all times relevant to this case, Goodrich maintained a "no-fault" attendance policy, meaning: "absences are not judged to be excused or unexcused. It is assumed when an employee is not at work, it is for good reason." Defs.' Joint Appendix of Evidence ("DJAE") Ex. 19 at 39. The Handbook contains the following attendance-related definitions:

Absence - Failure to show up for your scheduled shift.
Tardy - Not being at your machine or workstation ready to work at the beginning of the scheduled shift, ready to work at the end of break time,

---

Operations from 2010 through 2012 and, since 2012 he has served as Manager, Carbon and Landing Systems–West H.R. Id. The Court OVERRULES plaintiffs' objections to Brandt's provision of basic information about Goodrich, finding that Brandt demonstrates sufficient personal knowledge to lay a foundation for the evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|--------------------------|------|--------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

lunch time, or not adhering to the scheduled shift.
<u>Proper Notification</u> - Providing proper and timely notification to managers
or supervisors of absences and tardiness as outlined in the policy.
<u>Patterns of Issues</u> - Inability to be on time, punctual, or at work as scheduled
on a consistent basis.
<u>Occurrence</u> - A numerical value assigned to incidents of tardiness,
absenteeism, or lack of notification.

<u>Id.</u> With certain exceptions, every instance of absence or tardiness counts as an
"occurrence" under these policies.[5] <u>Id.</u> Pursuant to the Handbook's "Proper
Notification" section, an employee is required to call his manager, supervisor, or lead "at
least 30 minutes before the [employee's] scheduled starting time" if the employee will be
late or unable to report to work. <u>Id.</u> at 39-40. The Handbook contemplates "approved
leaves of absence," such as "family/medical or extended medical, bereavement, jury duty,
military, etc." <u>Id.</u> 40. For such approved leaves of absence, an employee is required to
give his supervisor "as much notice as possible." <u>Id.</u>

The Handbook also provides for paid "intermittent leave" and unpaid "personal
leaves of absence." <u>Id.</u> at 75, 79. Intermittent leave "is provided to employees for use in
case of personal illness, injury, or personal business which lasts less than seven
consecutive days." <u>Id.</u> at 75. An employee receives either five or four-and-a-half hours
of intermittent leave per month. <u>Id.</u> "A personal leave of absence is an authorized
absence granted by the company without pay for pressing personal reasons." <u>Id.</u> at 79.
An employee may only take an unpaid personal leave of absence once he has exhausted
his Intermittent Leave and Vacation time. <u>Id.</u>

Additionally, the Handbook provides for paid family leave and short-term
disability leave. <u>Id.</u> at 76, 77. Both types of leave run concurrently with leave taken
pursuant to the FMLA and CFRA. <u>Id.</u> During plaintiffs' employment, Goodrich utilized
the Reed Group, a third-party administrator, for administering employee leaves and
requests for accommodation. Brandt Decl. ¶ 14.

---

[5]Brandt testified that FMLA leave was one such "exception" to Goodrich's general
"100 percent attendance policy." Brandt Dep. at 37:23–48:12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|-------------------------|------|-------------------|
| Title    | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

Disciplinary action for absences or tardiness begins "after intermittent time and/or tardy allowance is exhausted." Id. Employees are provided with either five or four and a half hours of intermittent leave per month, as noted above, as well as seven tardies each year. See id. at 40, 75. However, "in situations where tardiness, a pattern of poor attendance, or improper notification becomes apparent, disciplinary action could begin even if an employee still has intermittent time remaining." Id. at 40–41. The Handbook provides that "[d]isciplinary action will not be taken for approved leaves of absence mentioned in the Proper Notification section." Id. at 41 (emphasis in original).

Attendance-related disciplinary action is based upon the number of "occurrences" an employee accrues. Id. "Occurrences" are counted as follows:

1.  Tardiness of less than a full hour will count as a half an occurrence.
2.  Failure to give proper notification will count as half an occurrence.
3.  Absences of a full shift or tardiness of more than one hour is counted as one occurrence.
4.  A no-call/no-show (failure to call and failure to show up for work) will be considered an additional occurrence.

Id. at 40. The Handbook also outlines progressive discipline for attendance issues:

1.  One full occurrence (or two halves) will constitute **a first level warning**.
2.  Two full occurrences (in any combination of whole or half occurrences) will constitute a **second level warning**.
3.  Three full occurrences (in any combination of whole or half occurrences) will constitute a **third and final warning.**
4.  Four full occurrences (in any combination) will constitute **termination.**
5.  **Three consecutive scheduled workdays of no-call/no-show will be considered as a voluntary termination**.

Id. at 41 (emphasis in original). The Handbook also sets forth a general progressive disciplinary structure of warnings, suspensions, and termination, but states that "Carbon Operations **reserves the right to terminate employment in all cases of rule**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

**infractions**" and that a "serious violation of Company rules or policies . . . may result in immediate termination." Id. at 43–44 (emphasis in original). Defendants submit uncontroverted evidence that other individuals besides Lavin and Sandoval have been terminated for (non-protected-leave-related) absenteeism issues. DSUFL ¶ 7; LSGD ¶ 7.

Goodrich also maintains an "Continuous Improvement" policy "focused on the continuous and systematic identification and elimination of waste." Id. at 15. As part of this policy, Goodrich encourages employees to present improvement ideas known as "kaizen." See Griffin Dep. 46:-47:16; 94:6-95:7; Lavin Depo. 42:12-53:2. Before implementing any significant change to the relevant manufacturing process, however, Goodrich is required to obtain approval from the contractor. DSUFL ¶ 17; LSGD ¶ 17.[6]

## B.    Background on Plaintiff Fernando Lavin

Lavin's claims arise out of the termination of his employment by defendants, and related warnings. Lavin contends that his termination was the result of unlawful discrimination based on two distinct sets of protected activity. First, Lavin alleges that defendants unlawfully terminated him due to his disability and the related exercise of his rights under the FMLA and CFRA. Second, Lavin alleges that defendants unlawfully terminated him for promoting a cost savings idea—an idea which defendants allegedly suppressed in order to defraud the U.S. government.

Lavin began working for Goodrich in 1997 as a machinist in the Santa Fe Springs Facility and remained in that position until his termination on or about September 1, 2012. DSUFL ¶¶ 8, 40; LSGD ¶¶ 8, 40; Lavin Depo. 60:12-25. Upon being hired, Lavin acknowledged receipt of Goodrich's anti-discrimination, "open door," and attendance policies. DSUFL ¶ 6; LSGD ¶ 6. Lavin does not have an engineering degree, or any post-secondary education in engineering. DSUFL ¶ 12; LSGD ¶ 12.

---

[6]Although plaintiffs claim this fact is disputed, their supporting evidence relates to the testing of a new process, without prior approval, not the actual implementation of a new process, and does not contradict Goodrich's evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:13-cv-09384-CAS(JEMx) | | Date | February 23, 2015 |
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | | |

### 1.    Plaintiffs' Machining Idea

Prior to 2009, Lavin and Sandoval proposed an idea to Goodrich that would change the manufacturing process for one of Goodrich's products (the "machining idea"). The details of this process and product are confidential, but are set forth in the under seal version of this order.  The parties dispute the feasibility and potential cost savings of the machining idea, but plaintiffs believe that the idea could have saved hundreds of thousands of dollars a year in total costs.  Subsequent to Lavin's submission of the idea to management, he received four pay raises.  DSUFL ¶ 28; LSGD ¶ 28.  Ultimately, the machining idea was not implemented.  Plaintiffs theory is that Goodrich scuttled the idea in order to defraud the federal government; defendants deny that they were motivated by any improper motive.

Lavin contends that he faced "backlash and threats" for advancing the machining idea.  He asserts that, during an audit of the Goodrich facilities in 2009,  Bazshushtari told him, "using a firm voice," not to mention the idea.  Lavin Decl. ¶ 22.  Bazshustari does not dispute this; rather, he testified that he made this statement to Lavin because [the machining idea] had not yet been thoroughly vetted, "and premature ideas are never good ideas to disclose to our customers."  Bazshushtari Depo. 771-78:2.

Further, Lavin claims that in March, May, and July 2012, he was warned by three senior Goodrich employees that he could face termination "like German Sandoval" should he continue advocating for the (by then rejected) machining idea.  Id. ¶ 23.[7]  Lavin admits that he has no proof that Goodrich ever lied to the government.  Lavin Decl. 88:1-7.  But he declares that, based on these admonishments and Griffin's September 8, 2010 email indicating positive test results, he "reasonably deduced and suspected that Goodrich was attempting to conceal the significant cost-saving features that would save" money for

---

[7] Defendants object to these statements as inadmissible hearsay.  Defs.' Evid. Object. No. 5.  The Court concludes that these statements are admissible nonhearsay because (1) they are offered not for their truth, but for the fact that the statements were made; and (2) they were made by defendants' employees acting in the scope of their employment, and thus constitute opposing party statements. Fed. R. Evid. 801(d)(2)(D).  Accordingly, the Court OVERRULES defendants' objection.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | | |
|---|---|---|---|---|
| **CIVIL MINUTES - GENERAL** | | | | **'O'** |
| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 | |
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | | |

the contractor and, ultimately, the federal government as the end user of the product. Id. ¶ 24. He further declares that he "reasonably believed based upon my years of employment . . . and a general understanding of contract requirements . . . that Goodrich [was] required by law under the Truth in Negotiations Act . . . to disclose favorable cost-saving information . . . whenever the contract was up for renewal or modification." Id. ¶ 26. He asserts that "upon information and belief, it is my reasonabl[e] suspicion that Goodrich violated the provisions of [the Truth in Negotiations Act ('TINA')]." Id. ¶ 27.[8]

## 2.    Lavin's Medical Condition, Leaves of Absence, and Attendance

In February 2005, Lavin was treated by cardiologist Oscar Matthews, M.D., who performed an angioplasty. Lavin Decl. ¶ 30. Following this surgery, Lavin's doctor placed him off work from February 18, 2005 through March 14, 2005. PJAE, Ex. 93. Lavin applied for and received FMLA leave from Goodrich to cover this time period. DSUFL ¶ 23; LSGD ¶ 23.[9]

On July 21, 2006, Lavin missed work. On July 28, 2006, he was counseled for exceeding his 54 hours of paid intermittent time and presented with a disciplinary action form. DSUFL ¶ 21; LSGD ¶ 31; PJAE Ex. 318. The form listed the July 21, 2006

---

[8]Defendants object to this declaration testimony from Lavin as lacking foundation and consisting of speculation and inadmissible lay opinion. The Court finds that although Lavin's statements of belief are not admissible to show that Goodrich in fact violated any specific statutes, Lavin lays a sufficient foundation for stating his beliefs and the reasons therefor. These objections, as well as similar objections made to similar declaration testimony by Sandoval, are OVERRULED.

[9] Plaintiff asserts that this fact is disputed, but plaintiff's own statements demonstrate that it is not. Defendants state that they "accommodated Lavin with a medical leave of absence," DSUFL ¶ 23; plaintiff asserts that "it was the Reed Group that approved the leave[,] not Goodrich," LSGD ¶ 23. This is a distinction without a difference, since it is undisputed that Goodrich contracted with the Reed Group to administer its employee leave. Lavin objects to several other undisputed facts on this basis as well. See LSGD ¶¶ 24–26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

absence as a single occurrence, and stated that "[Lavin] cannot have any more occurrences from 7/21/06 through 11/31/06." PJAE Ex. 318. Lavin contends that he missed work on July 21, 2006 to attend a doctor's appointment related to his heart condition. Lavin Decl. ¶ 32.

In November 2006, Lavin applied for and was granted a medical leave of absence related to his heart condition. DSUFL ¶ 24; LSGD ¶ 24. Lavin's approved leave began on November 21, 2006 and ended March 5, 2007. DSUFL ¶ 24; LSGD ¶ 24. The parties do not dispute that Lavin returned to work following this and other approved medical leaves.

On December 16, 2008, Lavin received a disciplinary action form, in which he was admonished to "improve his attendance and follow the proper notification procedure." PJAE Ex. 115. The form noted that Lavin was absent on December 9, 2008, and did not call to provide the requisite notice. Id. It also states that Lavin arrived to work 42 minutes late on December 10, 2008. Id. Lavin asserts that he missed work on December 9, 2008, to attend a cardiology appointment, PJAE Ex. 114 (note from Dr. Matthews), and the December 16, 2008 form indicates that Lavin presented to Goodrich a note to that effect, PJAE Ex. 15.

On August 3, 2009, Lavin received another disciplinary action form. DSUFL ¶ 32; LSGD ¶ 32. The form indicated that Lavin called in sick on July 30, 2009 after his shift had already begun, and notes that as a result of this absence, Lavin had exceeded his intermittent leave time for the year. Id. Lavin was admonished to comply with the attendance notification requirements. Id.

On August 23, 2010, Lavin received a formal written warning relating to attendance issues. DSUFL ¶ 34; LSGD ¶ 34; DJAE Ex. 67. The warning lists several dates, ranging from December 10, 2009 through August 20, 2010, on which Lavin either called in sick, left work early, or arrived to work late. DJAE, Ex. 67. It also explains that Lavin exhausted his intermittent time as of July 15, 2010. Id. In response to this warning, Lavin provided the following statement: "I will purchase a new large alarm clock and also, I will set my cell phone alarm for backup." DSUFL ¶ 35; LSGD ¶ 35; DJAE Ex. 67.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|-------------------------|------|-------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

In December 2010, Lavin's cardiologist scheduled a second angioplasty for January 5, 2011. PJAE Ex. 351. Lavin subsequently applied for, and received, a medical leave of absence that began on January 3, 2011 and ended on January 23, 2011. DSUFL ¶ 25; LSGD ¶ 25. Following this heart surgery, Lavin was diagnosed with hypertensive heart disease or coronary heart disease, angina pectoris and systolic heart failure. Lavin Depo. 243:11–244:2. From approximately June 13, 2011 through July 23, 2011, Lavin received special therapy on a daily basis to address his heart issues. See id.

On December 5, 2011, Lavin received a final warning from Goodrich—a document referred to as a "Decision Making Time" notice ("DMT"). DSUFL ¶ 36; LSGD ¶ 36. The DMT indicates that Lavin called in sick and missed work eight times between February 4, 2011 and October 27, 2011, and either arrived late or left early seven times during that same period. DJAE Ex. 68. The DMT also indicates that Lavin "called in from 01/03/2011 to 01/07/2011" and was "on medical leave on 01/10/2011 to 01/21/2011." Id. In the DMT,Tony Tran—Lavin's "leader" at Goodrich—wrote: "Fernando, I am committed to assisting you in meeting these expectations to the best of my ability. If I can provide any assistance for you, please do not hesitate to let me know." Id. In response to the DMT, Lavin stated that he would buy a second alarm clock and place it several feet from his nightstand. DSUFL ¶ 37; LSGD ¶ 37.

On December 21, 2011, Lavin received a written counseling document and was suspended for two days for sleeping on the job. LSGD ¶ 26; PJAE Ex. 133. Lavin contends that he has never slept on the job and that these incidents were fabricated by Mike Zanutto, his supervisor. LSGD ¶ 26. In response to the suspension, however, Lavin wrote that he would attempt to solve the problem by "get[tting] more hours of sleep, and tak[ing] medication only during the night so it [will not] affect my working condition." PJAE Ex. 133.

On January 5, 2012, Lavin applied for intermittent FMLA and CFRA leave. PJAE Ex. 135. This request was initially denied because the Reed Group had not received a medical certification from Lavin's treating physician. Id., Ex. 137. However, the request was ultimately approved, and Lavin was permitted intermittent leave between February 29, 2012 and August 31, 2012. DSUFL ¶ 24; LSGD ¶ 26. Specifically, Lavin was allowed "2 episodes monthly, 8 hours each time" and 1 monthly doctor visit, "3 hours

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

each time." PJAE Ex. 133.  Lavin was advised that he was required to contact his supervisors prior to taking an FMLA absence and to report any FMLA absence to the Reed Group within two business days.  Id.

On August 15, 16, and 17, 2012, Lavin was absent from work.  DSUFL ¶ 24; LSGD ¶ 24.  Lavin called in each day to report the absences; on two of these days, Lavin called to report his absence after his scheduled shift began.  DSUFL ¶ 39; LSGD ¶ 39.  In authenticated voice messages left for his supervisor, Lavin stated that he had laryngitis. See PJAE Exs. 323-325.

On September 1, 2012, Goodrich terminated Lavin's employment for the stated reason of "violation of company attendance policy."  DSUFL ¶ 40; LSGD ¶ 40; DJAE Ex. 84.  The recommendation for termination, which is dated August 22, 2012, cites as reasons for Lavin's termination his failures to call in to report his absences prior to the start of his shifts on August 15, 2012 and August 17, 2012.  DJAE Ex. 83.  The recommendation further states that Lavin failed to meet the expectations set forth in his DMT.  Id.  On August 17, 2012, prior to recommending Lavin's  termination, Human Resources manager Irene Shiu ("Shiu") emailed the Reed Group and learned that Lavin had not reported his August absences as FMLA intermittent leave.  DJAE Ex. 84 .

## B.    Plaintiff German Sandoval

Sandoval began working for Goodrich in 1995 as a research and development engineering technician in the Santa Fe Springs location.  Defs.' Statement of Undisputed Facts Sandoval ("DSUFS") ¶ 7; Sandoval Statement of Genuine Disputes ("SSGD") ¶ 7. In 2001, he was promoted to Trade Operations Process Specialist for the F414 program; he was subsequently promoted to Production F414 lead/supervisor.  SSGD ¶ 7.  In 2011, Sandoval was promoted to F414 Fabrication Lead.  DSUFS ¶ 8; SSGD ¶ 8.  Sandoval acknowledged receipt of Goodrich's anti-discrimination, "open door," and attendance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
| --- | --- | --- | --- |
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

policies described above.[10]  DSUFS ¶ 5.  Sandoval does not have an engineering degree.[11]
DSUFS ¶ 12; SSGD ¶ 12.

### 1.     Sandoval's Involvement with the Machining Idea

In 2010, Sandoval was involved in the testing of the machining idea described
above.  SSGD ¶ 16.  Sandoval states that Bazshushtari told him "not to mention the cost-
savings" of the idea to auditors for the contractor.  Sandoval Decl. ¶ 17.  Bazshushtari
admits that he "probably" told Sandoval not to raise the idea, because Goodrich was "not
ready" to discuss the idea with its customer.  Bazhushtari Depo. at 77:1-10.  After
Sandoval submitted the idea to Goodrich, he received positive performance reviews, pay
increases, and a promotion.  DSUFS ¶ 23; SSGD ¶ 23; Sandoval Decl. ¶ 12.

As stated above, Sandoval believes that the machining idea would have saved
hundreds of thousands of dollars per year in total costs.  Sandoval states that he and
Lavin complained to Zanutto "in early 2011" that Zanutto and Bazshushtari were not
advancing the idea, but that Zanutto told plaintiffs that he was not going to advance the
idea or its cost savings.  Id. ¶ 30(a).  In June 2011, Sandoval again complained to Zanutto
about his refusal to advance the idea and its cost savings.  Id. ¶ 30(b).  Sandoval also
discussed the idea at a meeting with Zanutto and Shiu on July 25, 2011.  Id. ¶ 40.
Sandoval declares that Zanutto was angry that Sandoval had brought up the idea again.
Id.

---

[10]Sandoval objects to the evidence supporting this fact---a form signed by
Sandoval, dated January 7, 2005, and acknowledging receipt of the handbook—as
lacking proper authentication.  The Court OVERRULES this objection, finding that
Brandt's declaration lays sufficient foundation for the exhibit to be admitted as a business
record.  See Fed. R. Evid. 803(6).

[11]Sandoval terms this fact "disputed," but his supporting evidence to the effect that
Sandoval was knowledgeable about fabrication and production of the product and was
otherwise a good employee does not contradict evidence that he has no degree in
engineering.  Sandoval's objection that this evidence is irrelevant is OVERRULED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|-------------------------|------|-------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

Sandoval declares that based on positive test results for the idea, "threats" discouraging him from raising the idea with auditors, and similar threats made to Lavin, he believes that "Goodrich was attempting to conceal cost-saving features" that would save money for the contractor and government.  Id. ¶ 19.  Sandoval testified that he has "no proof that Goodrich ever lied to the U.S. government."  Sandoval Depo. at 125:22–126:2.  Sandoval claims, however, that he "reasonably deduced that Goodrich was attempting to conceal cost-saving features" based on the test results and threats discussed above.  SSGD ¶ 39.  Sandoval also claims that, based on his years of experience with Goodrich and the product line, and "some review of applicable laws [he] saw on the internet, [Goodirch was] required by law under the Truth in Negotiations Act . . . to disclose favorable cost-saving information . . . whenever the contract was up for renewal or modification," and that Goodrich violated that law by failing to disclose the purported cost savings.  Sandoval Decl. ¶ 21.  As evidence that cost savings were concealed, Sandoval points to Bazshushtari's testimony that he did not recall specifically discussing cost savings from the machining idea with the contractor.  Bazshushtari Depo. at 83:13–84:11.

Sandoval also contends that prior to June 17, 2011, he had complained to Zanutto "on several occasions" that Zanutto "was engaging in unethical conduct and a conflict of interest by removing equipment and using outside uncertified sources that he had an interest in."  Sandoval Decl. ¶ 30.  Sandoval also complained about these perceived ethical breaches during the July 25, 2011 meeting with Zanutto and Shiu.  Id. ¶ 40.  Sandoval submits evidence that Zanutto was later investigated for alleged ethical and conflict of interest violations, including improperly benefitting from the sale of company equipment and outsourcing projects, and using Goodrich employees to do work for Zanutto's outside business.  Sandoval Decl. ¶ 45; PJAE Ex. 173.

### 2.    Sandoval's Attendance, Medical, and Discipline Issues

Sandoval asserts that he had "serious emotional and family problems that developed during the beginning of 2010" and persisted through the summer of 2011. Sandoval Decl. ¶ 25.  His wife filed for divorce, leading to child custody and visitation issues.  Id.  He states that he was required to go to court for these matters during work hours, and that he "[t]ypically informed [his] manager that [he] needed to go to court, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|-------------------------|------|-------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

it was approved." Id.  Sandoval declares that he told Shiu "in the beginning of 2011" that he was going through a divorce and child custody and visitation issues. Id. ¶ 26.  At the end of April 2011, Sandoval "attempted to speak with Shiu again about the divorce and child visitation issues and the need to take certain specific days off to attend court hearings," but was unable to speak with Shiu; however, he states that his supervisor "was aware and verbally approved [Sandoval's] time off." Id. ¶ 27.  Sandoval declares that "[s]ometime in July 2011, [he] called several times" to inform Shiu of his need to attend court hearings and was unable to speak to her, but left "a number of voice mail messages" for Shiu informing her of his need to attend court hearings and of the stress of his family issues. Id. ¶ 28.

On June 20, 2011, Zanutto coached Sandoval on attendance issues following a June 17, 2011 absence. DSUFS ¶ 24; SSGD ¶ 24. Sandoval maintains that he had called in to take personal leave to attend a court hearing on June 17, and had approval for personal leave for that day. Sandoval Decl. ¶ 38.  Sandoval responded to the coaching by stating that his absences were due to divorce proceedings, and that he needed to take time off.  DSUFS ¶ 24; SSGD ¶ 24.  Sometime around June 2011, after a meeting in which Sandoval had complained to Zanutto about his failure to advance the machining idea and alleged unethical behavior by Zanutto, Zanutto demoted Sandoval and removed him from his product line. Sandoval Decl. ¶ 31.  Plaintiff states that Zanutto subsequently demoted him again, to "Fabrication Operator—the lowest position for someone who has been employed for 16 years at Goodrich." Id. ¶ 32.

On July 22, 2011, Sandoval called in sick for that day of work and also mentioned that he would be absent due to court dates on July 27 and August 16, 2011. DSUFS ¶ 25; SSGD ¶ 25.  As of July 22, Sandoval had used his complement of personal days for 2011, including sick days. DSUFS ¶ 26; SSGD ¶ 26.  As a result of the July 22, 2011 absence, Sandoval was issued on July 25, 2011, a formal counseling statement regarding tardiness and absence issues. DSUFS ¶ 27; SSGD ¶ 27.  Sandoval declares that, at a counseling meeting on that same day, he informed Shiu and Zanutto that he would need to miss work on July 27, 2011 and August 16, 2011 to attend court hearings. Sandoval Decl. ¶ 40.  At this meeting, Sandoval also mentioned the idea (angering Zanutto), and Zanutto and Shiu signed and acknowledged a summary stating that Sandoval needed to attend divorce proceedings on the two aforementioned dates. Id. ¶ 41; PJAE Ex. 54.  This summary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

stated that two hours of paid absence had been approved for July 27, but that Zanutto
would "determine the hours on [August 16] based on [Sandoval's] attendance in the next
two weeks."  PJAE Ex. 54.

On August 15, 2011, Sandoval was scheduled to begin work at 6:00 AM.
Sandoval did not inform any supervisor prior to the beginning of that shift that he would
miss work.  At 7:11 A.M., Sandoval left Zanutto a voice mail message, informing him
that he would be in later that day.  At 11:00 A.M., Sandoval called Zanutto and informed
him that he would not be in at all due to car problems.  DSUFS ¶ 28; SSGD ¶ 28; see
DJAE Ex. 39.

On or about August 17, 2011, Sandoval was presented with and signed a DMT
final warning.  DSUFS ¶ 29; SSGD ¶ 29. This notice summarized the attendance-related
issues discussed above, and stated that Sandoval had "missed a total of 100.06 hours of
scheduled work time [year to date], not including vacation hours."  DJAE Ex. 39.  The
notice also stated that each time Sandoval had requested time off, "his manager would
remind him of the 100% attendance expectation and also remind [Sandoval] of the
[Employee Assistance Program] services,[12] but [Sandoval] assured his manager that he
really needed to take the time off due to his personal family matters."  Id.  The DMT
asked Sandoval to decide if he "really want[ed] to work" at Goodrich, and "if so, what
specifically [Sandoval would] do differently to correct [his] behavior."  Id.  The notice
asked Sandoval to put his decision in writing, stated that Goodrich would review that
written decision to determine whether to continue his employment, and represented that
Zanutto would "continue to have monthly one-on-one meetings with" Sandoval for the
subsequent three months to review his progress.  Id.  The notice concluded that it
"serve[s] as documentation that if the above issues are not immediately addressed, it
could lead to other action up to and including termination."  Id.

Sandoval provided a written statement in response to the DMT.  Among other
things, Sandoval: (1) stated that he wished to remain a Goodrich employee; (2) took "full
responsibility" for his "absences and . . . lack of commitment"; (3) acknowledged "that

---

[12]Employee Assistance Program services appear to include counseling.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

any failure in meeting these expectations will result in immediate termination; and (4) explained that his absences were partially caused by "family matters and emergencies" including "illness, car problems, and urgent phone calls from my children's school." PJAE Ex. 56.  Sandoval committed to (1) receiving help from professional family counseling, (2) attending work with perfect attendance and on time, and (3) calling work before his scheduled shift if "an issue comes up."  Id.  Sandoval also explained that he is "in the process of divorce," and asked Goodrich to permit him to attend court when required.  Id.  On August 17, 2011, plaintiff informed Zanutto and Richard Jones that he would be seeking professional family counseling.  Sandoval Decl. ¶ 50.

On August 19, 2011, Sandoval arrived late to work.  Defendants claim that he arrived to work fifteen minutes late, but Sandoval submits that he arrived just two minutes after the start of his scheduled shift, after having called in fifteen minutes prior to the shift to indicate that he would be slightly late.[13]  DSUFS ¶ 31; SSGD ¶ 31; Sandoval Depo. at 92:6-15; Sandoval Decl. ¶¶ 48, 51.  Sandoval was sent home and placed on administrative leave.  DSUFS ¶ 32; SSGD ¶ 32.

On August 22, 2011, Zanutto and Shiu requested approval to terminate Sandoval for his failure to "meet the 100% attendance expectation" and his "DMT Plan expectations."  DSUFS ¶ 33; SSGD ¶ 33; PJAE Ex. 60.  The termination approval request cited Sandoval's tardiness on August 17, 2011.  PJAE Ex. 60.  Goodrich submits undisputed evidence that other employees have been terminated for poor attendance and for violating the terms of DMT notices.  DSUFS ¶ 38; SSGD ¶ 38.  Sandoval, however, points to the declarations of Lavin and Henry Rocafuerte as showing that Goodrich "sets up" for minor infractions and subsequent termination employees who have been issued DMT notices.  See, e.g., Rocafuerte Decl. ¶¶ 9–12.[14]

---

[13]Because Sandoval is the non-moving party, the Court credits his account of this and other areas where the parties offer conflicting evidence.

[14]Defendants argue that there is an insufficient showing that these other employees were similarly situated to Sandoval, and that this evidence is therefore irrelevant, or at least insufficient to raise a triable issue of material fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

On or about August 29, 2011, Sandoval was hospitalized for depressive disorder. Sandoval Decl. ¶ 53. His doctor placed him off of work through September 26, 2011. Id.; PJAE Ex. 61. On August 29, 2011, Sandoval's wife called Zanutto and told him that Sandoval was in the hospital. Sandoval Decl. ¶ 54. On that same day, Zanutto contacted Shiu and informed her that Sandoval had been hospitalized. Id. ¶ 55; PJAE Ex. 65. Sandoval's termination recommendation was placed "on hold" pending the Reed Group's disability and medical leave eligibility determinations. DSUFS ¶ 35; SSGD ¶ 35.[15]

Also on August 29, 2011, a Goodrich Human Resources manager sent an email inquiring whether Sandoval had been offered FMLA or CFRA leave, which the manager stated was relevant to "whether we can proceed with term[ination] or not." Sandoval Decl. ¶ 56; PJAE Ex. 66. On August 31, 2011, Shiu responded that Sandoval had been offered, and had refused, FMLA, CFRA, and personal leave. PJAE Ex. 67. On September 1, 2011, Shiu stated in an email that Goodrich had received a doctor's note from Sandoval, that Reed Group had been notified about Sandoval's being placed off work through September 26, 2011, and that Sandoval was under the care of a psychiatrist. PJAE Ex. 69.

On September 1, 2011, Sandoval requested short term disability, FMLA, and CFRA leave; these requests were acknowledged by Reed Group and communicated to Shiu on that same day. Sandoval Decl. ¶ 59; PJAE Ex. 70. In a letter dated September 13, 2011, the Reed Group informed Sandoval that the Reed Group was unable to make a determination regarding his disability request because it had not received required medical information. PJAE Ex. 71.

On September 14, 2011, Sandoval suffered a cerebral hemorrhage. Sandoval Decl. ¶ 60; PJAE Ex. 334. On September 19, 2011, Sandoval's wife called Shiu and told her that Sandoval had suffered a head injury; Shiu memorialized this conversation in an email on that same day. Sandoval Decl. ¶ 61; PJAE Ex. 72.

---

[15]Sandoval states that this fact is "disputed," but rather than actually disputing defendant's evidence, argues that his termination was unjustified.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                     **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

In a letter dated September 22, 2011, the Reed Group denied Sandoval's disability claim for the stated reason that it had not received the required medical documentation. PJAE Ex. 74. Sandoval maintains that his wife had sent the required information; in any event, the required information was eventually provided to the Reed Group when Sandoval appealed the denial of disability benefits. Sandoval Decl. ¶¶ 62, 64(b).

On September 28, 2011, Shiu wrote an email asking if the Reed Group had sent a separate FMLA/CFRA denial letter in addition to the disability denial letter. PJAE Ex. 76. On that same day, the Reed Group issued an FMLA denial letter. PJAE Ex. 79. Also on September 28, 2011, a Goodrich Human Resources manager sent an email recommending that, because Sandoval had been denied both disability and FMLA leave, the company should "pursue termination." PJAE Ex. 78. On October 6, 2011, Shiu sent plaintiff a letter stating that his employment with Goodrich was terminated effective October 7, 2011, due to failure to "meet the 100% attendance expectation as defined in [his] Decision Making Time Plan." PJAE Ex. 80.

On October 27, 2011, the Reed Group sent Sandoval a letter affirming its earlier denial of short-term disability benefits. PJAE Ex. 84. On November 29, 2011, however, the Reed Group sent Sandoval a letter stating that his requests for FMLA and CFRA leave had been approved, retroactively effective from September 14, 2011 through December 6, 2011. PJAE Ex. 85.

On November 30, 2011, Shiu sent Matthew Evans at the Reed Group an email asking why the Reed group was "sending a letter to [Sandoval] stating his FMLA/CFRA leaves are approved," and noting that Sandoval's employment had been terminated. PJAE Ex. 86. In a separate email, Shiu wrote: "We don't want to deliver a wrong message to German Sandoval that we terminated his employment while he was under the FMLA/CFRA protection!" Id. Shiu stated that because Sandoval had been terminated, "his FMLA/CFRA leaves should not be approved," and asked Evans to not "send those approval letters." Id. Evans responded that the claim was "going to be closed" on December 1, 2011. Id. As noted above, however, the approval letter was sent to Sandoval. Sandoval Decl. ¶ 75. On July 10, 2012, the Goodrich Corporation Benefit Appeals Committee approved Sandoval's previously denied disability benefits for the period of August 29 through September 22, 2011. PJAE Ex. 34.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|--------------------------|------|-------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|--------------------------|------|-------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

## IV.   DISCUSSION

### A.   Plaintiff Fernando Lavin

#### 1.   UTC Is Entitled to Summary Judgment.

Defendants contend that Lavin's claims against UTC fail as a matter of law because UTC was never Lavin's employer.  Only an "employer" may be held liable for discrimination under the FEHA and CFRA.  Cal. Gov. Code §§12940(j)(1) and (j)(4)(A).  Likewise, to prove a claim for wrongful termination in violation of public policy, a plaintiff must establish the existence of an employer-employee relationship.  Holmes v. General Dynamics Corp., 17 Cal. App. 4th 1418, 1426 n.8 (1993).  Further, FMLA claims do not lie against a parent corporation absent a showing that the parent and subsidiary satisfy an "integrated employer test."  29 CFR 825.104(c)(2) (identifying common management, interrelation between operations, centralized control of labor relations, and degree of common ownership/financial control as factors considered).

"An employee who seeks to hold a parent corporation liable for the acts or omissions of its subsidiary on the theory that the two corporate entities constitute a single employer has a heavy burden to meet under both California and federal law."  Laird v. Capital Cities/ABC, Inc., 68 Cal. App. 4th 727, 737 (1998).  "Corporate entities are presumed to have separate existences, and the corporate form will be disregarded only when the ends of justice require this result."  Id. (concluding parent corporation was not plaintiff's employer because subsidiary was neither agent nor alter ego of parent, and plaintiff deduced insufficient evidence to satisfy FMLA integrated employer test).  "In particular, there is a strong presumption that a parent company is not the employer of its subsidiary's employees."  Id.  In determining whether this presumption is rebutted, "[t]he critical question is, what entity made the final decisions regarding employment matters related to the person claiming discrimination?  A parent's broad general policy statements regarding employment matters are not enough . . . a parent must control the day-to-day employment decisions of the subsidiary."  Id. at 461(internal citations, quotation marks, and alterations omitted); see also Cheeks v. Gen. Dynamics, 22 F. Supp. 3d 1015, 1029 (D. Ariz. 2014) (concluding that parent corporation was not employer where parent did not exercise control over subsidiary's daily operations or personnel decisions).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

Defendants submit evidence that Lavin was employed by Goodrich, not UTC. DSUFL ¶ 1 (citing DJAE Exs. 54 & 94; Lavin Depo. at 31:5-6, 133:9–135:4; Brandt Decl. ¶¶ 8–10). Lavin notes in opposition that his termination letter and final paycheck authorization were printed on UTC Aerospace Systems stationary, and that UTC identified Goodrich as a wholly-owned subsidiary on its 2012 10-K Statement. LSGD ¶ 40. Lavin also points to the testimony of various employees who stated that they work for an entity with "UTC" in its name. But most of these employees clearly testified that, subsequent to UTC's acquisition of Goodrich in 2012, they worked for "UTC Aerospace," the fictional name of Goodrich. Brandt Depo. at 7:3-6 (Brandt works for "UTC Aerospace Systems . . . and our legal entity is Goodrich."); St. John Depo. at 5:14-15 (Pete St. John works for "UTC Aerospace."); Griffin Depo. at 18:21–19:5 (Griffin works for "United Technologies Aerospace Systems" and is paid by "Goodrich," which is "still a legal entity.").

The Court finds that Lavin has not submitted evidence sufficient to meet his heavy burden of overcoming the presumption that UTC was not his employer. Lavin proffers no evidence tending to suggest that UTC controlled the day-to-day operations of Goodrich at the time of his termination, or otherwise exercised control over Goodrich "to a degree that exceeds the control normally exercised by a parent corporation." Laird, 68 Cal. App. 4th at 738. Although plaintiff makes much of the fact that he received employment materials printed on UTC Aerospace System stationary, and that certain of defendants' deponents identified themselves as "UTC" employees, Goodrich began operating under the UTC Aerospace Systems name upon being acquired by UTC in July 2012. The Court knows of no authority supporting the proposition that a subsidiary forfeits its legal status as a separate corporate entity by adopting a name derivative of that of its parent corporation. Further, the fact that UTC identified Goodrich as its wholly owned subsidiary on its 2012 tax forms demonstrates nothing more than a parent-subsidiary relationship. See id. (explaining that plaintiff must do more than show "facts [that] exist in every parent-subsidiary relationship . . . [otherwise] such a showing would create a triable issue of material fact in every case."). Finally, defendants' evidence indicates that, at the time of Lavin's termination, Goodrich operated its own human resources department independent of UTC. Brandt Decl. ¶ 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                'O'

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

Because Lavin's evidentiary showing is insufficient to create a triable issue of fact, the Court concludes that Lavin cannot hold UTC liable as his "employer" as a matter of law. Accordingly, the Court **GRANTS** defendant UTC's motion for summary judgment as to all of Lavin's claims. The analysis below therefore pertains only to Goodrich.

### 2.    Violation of FEHA

Lavin asserts three violations of FEHA's prohibition against disability discrimination. First, Lavin contends that was he was discriminated against, and ultimately terminated, because of his heart-related disability. See FAC ¶ 91. Second, he asserts that defendants failed to reasonably accommodate his disability. See id. ¶ 96. Third, plaintiff argues that defendants failed to engaged in the interactive process. Id. The Court addresses each in turn.

### a.    Disability Discrimination in Violation of FEHA

In evaluating claims for disability discrimination, California has adopted the three-stage burden shifting test set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973). Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000). Once the plaintiff has made a prima facie showing of employment discrimination, "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action." Deschene v. Pinole Point Steel Co., 76 Cal. App. 4th 33, 44 (1999). If the employer offers such a reason, "plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated." Id.

### i.    Prima Facie Case

To establish a prima facie case of disability discrimination under the FEHA, a plaintiff must show (1) he suffered from a disability, (2) he could perform the essential duties of his job with or without reasonable accommodation, and (3) he was subjected to adverse employment action because of his disability. McInteer v. Ashley Distrib. Servs., Ltd., 2014 WL 4105262, at *8 (C.D. Cal. Aug. 19, 2014) (citing Sandell v. Taylor-Lustig,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                              **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

Inc., 188 Cal. App. 4th 297, 310 (2010)). "Numerous courts note that '[t]he prima facie burden is light; the evidence necessary to sustain the burden is minimal.' " Id. at *9 (quoting Sandell, 188 Cal. App. 4th at 310).

Although defendants do not dispute that Lavin suffered from a disability within the meaning of FEHA, they contend that he cannot demonstrate that he was able to perform his essential job duties, or that he was terminated because of his disability. Examining the evidence in the light most favorable to plaintiff, the Court finds that there are triable issues of fact as to each element of Lavin's prima facie case.

First, defendants contend that Lavin's repeated absences demonstrate that he was unqualified for his position. Mot. Summ. J. at 16 (citing Lopez v. Costco Wholesale Corp., 2009 WL 3246847, *6 (E.D. Cal. Oct. 7, 2009)). But defendants' reliance on Lopez is misplaced. In that case, the court determined that the employee failed to demonstrate that he was qualified for his position, since he stopped coming to work entirely and did not respond to requests from management to report his absences, functionally "abandon[ing] his job." Id. at *6. No such facts exist here. Moreover, Lavin proffers evidence that he received positive annual performance reviews during his tenure at Goodrich. See PJAE Exs. 49-53 (performance reviews for years 2008, 2009, 2010, 2011, 2012). A reasonable jury could conclude that Lavin was qualified for his position.

Second, although Goodrich contends that there is no evidence that it acted with discriminatory motive, it is undisputed that Goodrich decided to terminate Lavin's employment while he was approved for heart-related, intermittent leave. At this stage of the McDonnell Douglas analysis, the temporal overlap between plaintiff's protected conduct and his termination—coupled with Goodrich's knowledge of the protected conduct—suffices to create an inference of a causal connection between these two events. See Arteaga v. Brink's, Inc., 163 Cal. App. 4th 327, 353 (2008) ("Because the employee's burden of establishing a *prima facie* case . . . is fairly minimal, the temporal proximity between an employee's disclosure of his symptoms and a subsequent termination may satisfy the causation requirement at the *first step* of the burden-shifting process." (emphasis in original)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|--------------------------|------|-------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

ii.     Defendants' Legitimate Reasons for Terminating Lavin

Once a plaintiff has established a prima facie case for employment discrimination, "the burden shifts to the defendant to [articulate a] legitimate nondiscriminatory reason for its employment decision." Arteaga, 163 Cal. App. 4th at 342-43 (alteration in original). Defendants' burden is "not onerous" and "is generally met by presenting admissible evidence showing the defendant's reason for its employment decision." Wills v. Superior Court, 194 Cal. App. 4th 143, 160 (2011).

Here, defendants have proffered admissible evidence that they terminated Lavin's employment because he failed to comply with Goodrich's attendance requirements. See, e.g., Hooker v. Parker Hannifin Corp., 548 F. App'x 368, 370 (9th Cir. 2013) (affirming that "attendance infractions" constitute non-retaliatory, non-discriminatory reasons for terminating employment). In particular, the record demonstrates that Lavin had a history of noncompliance with Goodrich's attendance policies even when he was not on medical leave. Moreover, it is undisputed that Lavin did not call in before the start of his shift to report his absences on two of the three days he was absent in August 2012. The Court thus concludes that defendants have met their burden of proffering a legitimate reason for plaintiff's termination, and the burden now shifts to Lavin to demonstrate pretext.

iii.     Lavin's Showing of Pretext

Once the employer has offered a legitimate, nondiscriminatory reason for the adverse employment action, the "plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated." Sandell, 188 Cal. App. 4th at 314 (quoting Faust v. Calif. Portland Cement Co., 150 Cal. App. 4th 864, 866 (2007)) (internal quotation marks omitted); see also Wills, 195 Cal. App. 4th at 160 (describing requirement that plaintiff present "substantial evidence" of pretext to avoid summary judgment). As the California Court of Appeal has explained:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|-------------------------|------|-------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

> In demonstrating that an employer's proffered nondiscriminatory reason is false or pretextual, "[an employee] cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent . . . . Rather, the [employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them 'unworthy of credence,' . . . and hence infer 'that the employer did not act for the [asserted] nondiscriminatory reasons.' "

Sandell, 188 Cal. App. 4th at 314 (quoting Hearsant v. Cal. Dep't of Social Servs., 57 Cal. App. 4th 997, 1005 (1997)) (further internal quotation marks and citations omitted).

Plaintiff contends that defendants "used absences and tardies that were clearly associated [with] Lavin's heart condition and treated them as personal leave and disciplined him." Opp'n Mot. Summ. J. at 9. Defendants respond that Lavin's showing of pretext fails because the "absences and tardiness held against him were not . . . those designated as protected leave under any statute." Reply at 2.

The Court concludes that disputed issues of material fact remain regarding pretext. First, Lavin directs the Court to the DMT "final warning" document issued to plaintiff on December 5, 2011. The DMT attaches a list of all of Lavin's absences for the year 2011—including the dates in January 2011 when plaintiff was on approved medical leave. Although defendants contend that these were merely notes, and that the decision to issue the DMT was not informed by Lavin's approved medical absences, a reasonable juror could conclude otherwise.

Moreover, even assuming that defendants' decision to terminate Lavin was solely based upon unapproved absences and tardies, a reasonable juror could conclude that some of these absences and tardies were caused by Lavin's heart condition. In Humphrey v. Memorial Hospitals Ass'n, 239 F.3d 1128 (9th Cir. 2001), an employee who suffered

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          '**O**'

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|-------------------------|------|-------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

from Obsessive Compulsive Disorder ("OCD") was terminated for repeated absenteeism and tardiness.  Because of her disorder, plaintiff engaged in time consuming, compulsive rituals that often caused her to arrive late to work or to miss work entirely.  Id. at 1130.  The employee brought claims for disability discrimination in violation of the FEHA and the Americans with Disabilities Act ("ADA").  Id.  Reversing the district court's grant of summary judgment for the employer, the Humphrey court explained that "[f]or purposes of the ADA, with few exceptions, conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." Id. at 1139.[16]  The court thus concluded that "a jury could reasonably find the requisite causal link between a disability of OCD and Humphrey's absenteeism and conclude that [the employer] fired Humphrey because of her disability." Id. at 1140; see also Kimbro v. Atl. Richfield Co., 889 F.2d 869, 875 (9th Cir. 1989) (finding causal connection between termination for absenteeism and migraine condition).

Here, Lavin's situation approximates that of the plaintiff in Humphrey.  It is undisputed that Lavin suffered from a heart condition beginning in 2005 and continuing through his termination, and that he took medical leave in 2005, 2006, 2007, 2011, and 2012 to tend to this condition.  Further, when Lavin was suspended on December 21, 2011 for allegedly sleeping on the job, he stated that he would attempt to solve this problem by taking certain medication only at night.  Based on this evidence, a reasonable jury could conclude that some of Lavin's attendance infractions amounted to "conduct resulting from [his] disability, rather than a separate basis for termination."  The Court thus concludes that there are triable issues of fact concerning whether Lavin's attendance problems were caused by his disability and, consequently, whether he can show pretext.

---

[16] The court addressed the employee's state and federal claims together.  Id. at 1133, n.6 ("Because the FEHA provisions relating to disability discrimination are based on the ADA, decisions interpreting federal anti-discrimination laws are relevant in interpreting the FEHA's similar provisions.  We analyze Humphrey's state and federal disability claims together, relying on federal authority in the absence of contrary or differing state law." (citations omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                    **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|-------------------------|------|-------------------|

| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. |
|-------|------------------------------------------------------------------|

Accordingly, the Court **DENIES** Goodrich's motion for summary judgment as to Lavin's claim for disability discrimination under FEHA.

### b.    Failure to Accommodate and Failure to Engage in the Interactive Process

Lavin also asserts that defendants failed to provide him with a reasonable accommodation for his disability in violation of California Government Code § 12940(m), and failed to engage in the interactive process in violation of Government Code § 12940(n).  "The elements of a failure to accommodate claim are (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability."  Scotch v. Art Inst. of Cal. Orange Cnty., Inc., 173 Cal. App. 4th 986, 1009 (2009).  Pursuant to section 12940(n), an employer is required "to engage in a timely, good faith, interactive process with the employee . . . with a known physical . . . disability or known medical condition."  Cal. Gov't Code § 12940(n).  "The 'interactive process' required by the FEHA is an informal process with the employee or the employee's representative, to attempt to identify a reasonable accommodation that will enable the employee to perform the job effectively."  Scotch, 173 Cal. App. 4th at 1013.

The Court concludes that there are triable issues of material fact with regard to plaintiff's claims for failure to accommodate and failure to engage in the interactive process.  In Humphrey, discussed above, the court explained that "the employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed."  239 F.3d at 1138 (concluding that employer "had a duty to explore further arrangements to reasonably accommodate Humphrey's disability.").  Although it is undisputed that defendants accommodated Lavin's request for intermittent leave in 2012, Lavin's "attempt to perform [his] job functions by means of a less drastic accommodation does not forfeit [his] right to a more substantial one upon the failure of the initial effort."  Id.  Based upon defendants' knowledge of Lavin's heart condition and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

history of heart-related leave, a juror could conclude that defendants were aware that the intermittent leave accommodation was insufficient, and further accommodation needed.

Accordingly, the Court **DENIES** summary judgment on Lavin's claims for failure to accommodate and failure to engage in the interactive process in violation of FEHA.

### 2.    Violation of FMLA and CFRA

"The FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001) (citing 29 U.S.C. §§ 2612(a), 2614(a)). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights. 29 U.S.C. § 2615(a)(1); Sanders v. City of Newport, 657 F.3d 772, 778 (9th Cir. 2011).

Prohibited acts under § 2615(a) of the FMLA fall into two general categories: "interference" claims under § 2615(a)(1) and "retaliation/discrimination" claims under § 2615(a)(2). Latif v. M & C Hotel Interests, Inc., 2012 WL 893729, at *3 (C.D. Cal. Mar. 14, 2012). However, as the Ninth Circuit has explained, "[b]y their plain meaning, the anti-retaliation or anti-discrimination provisions [of the FMLA] do not cover visiting negative consequences on an employee simply because he has used FMLA leave. Such action is, instead, covered under § 2615(a)(1), the provision governing 'Interference [with the] Exercise of rights.' " Bachelder, 259 F.3d at 1124. Accordingly, "when a plaintiff alleges retaliation for exercise of FMLA rights, that claim is properly analyzed as an interference claim under section 2615(a)(1)." Rivera v. FedEx Corp., 2013 WL 6672401, at *6 (N.D. Cal. Dec. 18, 2013)

The CFRA is California's counterpart to the FMLA. The Ninth Circuit has held that FMLA and CFRA claims may be analyzed together, "[s]ince CFRA adopts the language of the FMLA and California state courts have held that the same standards apply." Xin Liu v. Amway Corp., 347 F.3d 1125, 1132, n.4 (9th Cir. 2003) (citing Dudley v. Dep't of Transp., 90 Cal. App. 4th 255, 261 (2001)); see also Lew v. Superior Court, 348 F. App'x 227, 229 (9th Cir. 2009) ("The CFRA adopts the same language as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | ‘O’ |
|---|---|---|---|
| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

the FMLA, and California state courts have held that the same standards apply; therefore, this memorandum will treat both causes of action together.").

Here, Lavin asserts claims for both retaliation and interference in violation of the FMLA. However, both claims turn on Lavin's allegations that Goodrich's termination of his employment unlawfully interfered with his right to take FMLA-protected medical leave. Accordingly, the Court addresses these claims together under the FMLA interference rubric.

"To prevail on a FMLA claim based on alleged interference with the right to take leave, the employee must prove that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." Aboulhosn v. Merrill Lynch, Pierce, Fenner & Smith Inc., 940 F. Supp. 2d 1203, 1215 (C.D. Cal. 2013) (internal quotations and citations omitted). "No scheme shifting the burden of production back and forth is required." Bachelder, 259 F.3d at 1125. "The FMLA . . . protect[s] an employee against disciplinary action based on her absences if those absences are taken for one of the Act's enumerated reasons." Id. A plaintiff "need only prove by a preponderance of the evidence that [his] taking of FMLA-protected leave constituted a negative factor in the decision to terminate [him]." Id.

Goodrich does not appear to dispute that Lavin has satisfied the first four elements of his interference claim. Rather, Goodrich contends that this claim fails because it is undisputed that Goodrich "accommodated Lavin for over five years" and thus "the available facts do nothing to call into question the clear legitimacy of Lavin's termination." Mot. Summ. J. at 20.

The Court concludes that a genuine issue of material fact exists concerning whether Lavin's FMLA-protected absences constituted "a negative factor" in the decision to terminate his employment. As discussed with regard to Lavin's disability discrimination claim, the DMT "final warning" document issued to plaintiff attaches a list of all of Lavin's absences for the year 2011—including dates in January 2011 when

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|--------------------------|------|--------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

plaintiff was on approved medical leave. Despite defendants' assertions to the contrary, a reasonable juror could infer that these protected absences informed defendants' decision to terminate Lavin. See 29 C.F.R. § 825.220(c) ("[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions . . . nor can FMLA leave be counted under no fault attendance policies."). Moreover, it is undisputed that Lavin had been approved to take intermittent medical leave from February 29, 2012 through August 31, 2012, and that Lavin's termination notice references his failure to call in to report absences prior to the start of his shifts on August 15, 2012 and August 17, 2012. The timing of plaintiff's termination lends additional support to Lavin's position. See McKenna v. Permanente Med. Grp., Inc., 2013 WL 3766769, at *7 (E.D. Cal. July 16, 2013) (denying summary judgment for employer in light of the close proximity in timing of plaintiff's termination relative to her approval for additional FMLA leave).

For these reasons, the Court **DENIES** summary judgment as to Lavin's claims for violation of the FMLA and CFRA.

### 3.    Wrongful Termination / Retaliation in Violation of Public Policy

The California Supreme Court created a common law claim for wrongful termination in violation of public policy in the case of Tameny v. Atlantic Richfield Co., 27 Cal. 3d 167 (1980). To prove a claim for wrongful termination in violation of public policy, a plaintiff must establish (1) an employer-employee relationship; (2) termination or other adverse employment action; (3) the termination or adverse action was a violation of public policy; (4) the termination or adverse action was a legal cause of Plaintiff's damages; and (5) the nature and extent of the damages. Holmes v. General Dynamics Corp., 17 Cal. App. 4th 1418, 1426 n.8 (1993). "[P]ublic policy cases fall into one of four categories: the employee (1) refused to violate a statute; (2) performed a statutory obligation; (3) exercised a constitutional or statutory right or privilege; or (4) reported a statutory violation for the public's benefit." Green v. Ralee Eng'g Co., 19 Cal. 4th 66, 76 (1998). "[T]o sustain a claim of wrongful discharge in violation of fundamental public policy, [a plaintiff] must prove that his dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1256 (1994) (footnotes omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL                           'O'

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|--------------------------|------|-------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

"[A]lleged violations of internal practices that affect only the employer's or employee's interest, and not the general public's interest, will not give rise to tort damages."  Green, 19 Cal. 4th at 75.

"In wrongful termination cases California courts apply the burden shifting analysis as set forth in McDonnell Douglas."  Velto v. Draeger Medical, Inc., 2007 WL 4376200, at *3 (W.D. Wash. Dec. 13, 2007) (citing Nelson v. United Technologies, 74 Cal. App. 4th 597, 613 (1999)); see also Loggins v. Kaiser Permanente Intern., 151 Cal. App. 4t 1102, 1108-09 (2007) ("When a plaintiff alleges retaliatory employment termination . . . as a claim for wrongful employment termination in violation of public policy, and the defendant seeks summary judgment, California follows the burden shifting analysis of McDonnell Douglas Corp.").  To establish a Tameny claim, a plaintiff need only show that an illegitimate factor played "a motivating or substantial role" in the employment decision."  Grant-Burton v. Covenant Care, Inc., 99 Cal. App. 4th 1361, 1379 (2002).

Here, Lavin's wrongful termination claim is grounded in two sets of public policies.  First, Lavin contends that he was retaliated against for exercising his rights under the FMLA, CFRA, and FEHA.  The Court has already concluded that triable issues of material fact exist with regard to Lavin's claims under these three statutes, and defendants do not dispute that the public policies embodied in these laws may form the basis of a Tameny claim.  Accordingly, the Court **DENIES** summary judgment on Lavin's wrongful termination claim, to the extent that this claim is predicated upon plaintiff's FMLA, CFRA, and FEHA claims.  See Amway Corp., 347 F.3d at 1138 ("[B]ecause there is a triable issue of material fact as to whether Liu was terminated in violation of the FMLA and CFRA, summary judgment must also be denied on the question fo whether her termination violated public policy."); Negus v. Abbott Critical Care, No. C 94-20112 RMW, 1994 WL 721597, at *6 (N.D. Cal. Dec. 21, 1994) (denying summary judgment on ADA- and FEHA-based Tameny claim where genuine issues of fact existed as to the statutory claims)

Second, Lavin asserts that his termination violated public policies set forth in the TINA, and in the federal and California False Claims Acts.  Specifically, Lavin asserts that defendants retaliated against him for advancing the machining idea.  Lavin contends

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| CIVIL MINUTES - GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

that adopting the idea would have resulted in significant cost savings for the U.S. government as an end user of the product.  Lavin contends that, by declining to implement this idea, Goodrich was engaged in a scheme to defraud the government.

As to the TINA, defendants are correct that Lavin "cannot raise a new theory for the first time in opposition to summary judgment."  Patel v. City of Long Beach, 564 F. App'x 881, 882 (9th Cir. 2014) (citing Coleman v. Quaker Oats Co., 232 F.3d 1271, 1292–93 (9th Cir. 2000); see also Pickern v. Pier 1 Imports (U.S.) Inc., 457 F.3d 963, 968–69 (9th Cir. 2006) (affirming a district court's refusal to consider at the summary judgment stage factual allegations not pled in the complaint);  McKinney v. Am. Airlines, Inc., 641 F. Supp. 2d 962, 983 (C.D. Cal. 2009) ("Unless a plaintiff includes allegations in her complaint or informs the defendant before the close of discovery of her intent to rely on previously disclosed allegations, she may not assert them for the first time in opposing summary judgment.").  Here, neither Lavin's complaint nor FAC references the TINA, and Lavin never requested leave to amend his complaint to add a TINA-based wrongful termination claim.  Accordingly, the Court **GRANTS** defendants' motion for summary judgment to the extent that it is predicated upon the TINA.[17]

---

[17]At oral argument, plaintiff's counsel conceded that TINA was not raised until the opposition to summary judgment, but contended that his reliance on that statute did not represent a new theory because it implicated the same factual allegations and public policies as the FCA theory.  The Court disagrees.  First, as plaintiff's own briefing recognizes, the TINA and FCA proscribe different activity: the FCA prohibits submitting false or fraudulent claims to the federal government for approval, and the TINA imposes an affirmative duty to submit cost or pricing data under certain circumstances.  Compare 31 U.S.C. § 3279(1), with 10 U.S.C. § 2306a.  A Tameny claim must be " 'tethered to' either a specific constitutional or statutory provision," so that the defendant and court do not "hav[e] to guess at the nature of the public policies involved."  Green, 19 Cal. 4th at 83, 87.  Therefore, the Court does not find persuasive plaintiffs' argument that the rule that a party may not raise a new theory in opposing summary judgment is inapplicable to this claim.  Additionally, even if the Court were to permit plaintiffs to proceed on the new TINA theory, it would seem to fail for one of the same reasons that the FCA claims fail—a lack of evidence that plaintiffs put Goodrich on notice of the suspected illegality.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                              **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|--------------------------|------|-------------------|

| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. |
|-------|------------------------------------------------------------------|

The Court likewise concludes that defendants are entitled to summary judgment on plaintiff's wrongful termination claims to the extent that they are predicated upon public policies embodied in the False Claims Acts. As noted above, Lavin's theory appears to be that he was terminated for continuing to promote plaintiffs' machining idea and its purported cost savings. Lavin is correct that <u>Tameny</u> claims lie where an employee is terminated for reporting his "reasonably based suspicions" of illegal activity. <u>Green v. Ralee Eng'g Co.</u>, 19 Cal. 4th 66, 87 (1998) (explaining that employee "need not prove an actual violation of law"); <u>see also</u> <u>Freund v. Nycomed Amersham</u>, 347 F.3d 752, 759 (9th Cir. 2003) ("As long as the employee makes the . . . complaint in good faith, it does not matter for purposes of a wrongful termination action whether the complaint identifies an actual violation of . . . statutes or regulations."). Here, however, although Lavin repeatedly told Zanutto and others that his machining idea would be more cost-effective, there is no evidence that Lavin ever reported suspicions that defendants' rejection of the machining idea amounted to "illegal activity." Moreover, the Court notes that it is undisputed that the idea was presented to some extent to the contractor, and that Lavin received four pay raises over a period of several years after he began advocating for the idea.

Further, it is far from clear that plaintiffs' protests that their subcontractor employer failed to implement or advocate an arguably cheaper machining process implicate the public policies of the False Claim Acts. <u>See</u> 31 U.S.C. § 3279(1) (criminalizing (a) knowingly presenting or causing to be presented a false or fraudulent claim for payment or approval, (b) knowingly making or causing to be made a false record to statement to get a false or fraudulent claim approved, or (c) conspiring to defraud the government by getting a false or fraudulent claim paid); Cal. Gov't Code § 12651 (similar); <u>see</u> <u>United States v. Rockwell Space Operations Co.</u>, No. CIV.A.H-96-3626, 2002 WL 864246, at *11 (S.D. Tex. Apr. 3, 2002) ("An allegation of inefficiency does not state a claim under the FCA."); <u>see also</u> <u>Luckey v. Baxter Healthcare Corp.</u>, 183 F.3d 730, 733 (7th Cir. 1999) ("All this record reveals is a dispute about whether Baxter's testing protocols could be improved. An affirmative answer to that question would not suggest that Baxter's representations to the United States in years past were false or fraudulent."). For these reasons, the Court **GRANTS** summary judgment on Lavin's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                          **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

claim for wrongful termination in violation of the public policy embodied in the FCA and CFCA.

### B.   Plaintiff German Sandoval

#### 1.   Plaintiff's CFRA Claim is Procedurally Barred.

Plaintiff asserts that he was discharged in retaliation for taking leave under the CFRA. "Because the CFRA is part of the . . . FEHA . . ., the enforcement procedures and remedies available for its violation are the same as for other FEHA violations." Hon. Ming W. Chin, et al., California Practice Guide: Employment Litigation § 12:1370 (2013). "The timely filing of an administrative complaint and exhaustion of that remedy is a prerequisite to maintenance of a civil action for damages" under the statute. Id. § 12:1371 (citing Cal. Gov't Code § 12965(b)). "No [administrative] complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred." Cal. Gov't Code § 12960(d).

Sandoval was terminated on October 7, 2011, and his FMLA/CFRA leave, at the end of which he was not reinstated, expired on December 6, 2011. Because Sandoval did not file his administrative complaint until August 7, 2013, FAC ¶ 50, his statutory CFRA claim is barred. Although Sandoval does not address this issue in his opposition brief, in his statement of genuine issues, he argues that he did not become aware of the unlawfulness of Goodrich's attendance policy until he consulted legal counsel in summer 2013, and that the statute of limitations should therefore be tolled. But Sandoval did not plead this ground for equitable tolling. See Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 991 (9th Cir. 2006) ("[C]ourts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings."). Moreover, "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999) (emphasis added). Courts have rejected claims that statutes of limitations should be tolled until the plaintiff has consulted legal counsel, where the plaintiff does not set forth extraordinary reasons

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

why he could not have consulted an attorney sooner. See Santos v. U.S. Bank N.A., 716 F. Supp. 2d 970, 977 (E.D. Cal. 2010) ("The court declines to institute a rule in which obtaining an attorney becomes the touchstone upon which tolling of the statute of limitations may be granted."); Valdez v. America's Wholesale Lender, 2009 WL 5114305, at *6 (N.D. Cal. Dec. 18, 2009) ("If the Court were to accept . . . allegations of ignorance of the law until informed by counsel as sufficient for a pleading of equitable tolling, every plaintiff could assert the same allegation, and [the] statute of limitations provision would have no real meaning."). Sandoval sets forth no such extraordinary circumstances here. Accordingly, the Court **GRANTS** summary judgment as to Sandoval's CFRA claim.

### 2.    Violation of FMLA

Sandoval alleges that Goodrich violated the FMLA by terminating him for taking medical leave. See FAC ¶¶ 36–48. As stated above, to prevail on such a claim, plaintiff must show "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." Aboulhosn, 940 F. Supp. 2d at 1215 (internal quotations and citations omitted). "Although the FMLA created a statutory right to reinstatement after taking FMLA leave, this right is not absolute." Sanders, 657 F.3d at 778. The FMLA is not to " 'be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than the right, benefit, or position to which the employee would have been entitled had the employee not taken the leave.' " Rivera, 2014 WL 6672401, at *6 (quoting 29 U.S.C. § 2614(a)(3)(B)). Still, it is the employer's burden to show that the employee would have been dismissed regardless of the FMLA leave. Sanders, 657 F.3d at 779–81. "[I]t is not enough for the employer to show merely that it had 'reasonable cause' for not reinstating the employee; it must go further, and show that the employee would not have been employed in the same position even if he had not taken FMLA leave." Rivera, 2014 WL 6672401, at *6 (citing Sanders, 657 F.3d at 780–81). At trial, the plaintiff "need only prove by a preponderance of the evidence that [his] taking of FMLA-protected leave constituted a negative factor in the decision to terminate [him]." Bachelder, 259 F.3d at 1125.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  ‘O’

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

Goodrich argues that there is no triable issue of fact as to the fifth element because the termination process was already in motion by the time Sandoval made his first request for leave or accommodation, and undisputed evidence shows that Sandoval would not have been reinstated absent his request for FMLA leave.  Goodrich highlights Sandoval's attendance problems and failure to meet his DMT expectations, and points out that Zanutto and Shiu recommended that he be terminated on August 22, 2011, over a week before plaintiff's request for FMLA leave.

Although it is undisputed that a <u>recommendation</u> to terminate Sandoval was made prior to his request for leave, the final decision to terminate him was not made until after he had requested leave, and indeed while he was on (retroactively granted) FMLA leave. <u>See</u> <u>DeFreitas v. Horizon Inv. Mgmt. Corp.</u>, 577 F.3d 1151, 1160 (10th Cir. 2009) ("Whenever termination occurs while the employee is on leave, that timing has significant probative force."); <u>see also</u> <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1065 (9th Cir. 2002) ("[I]n some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity."). Additionally, though there is evidence that Sandoval had absence and tardiness issues, there is also evidence that he received positive performance reviews and was a knowledgeable employee.  Although a jury could conclude that the decision to terminate Sandoval was entirely independent of his request for leave and that the recommendation to terminate him would have been finalized even absent his leave request, a jury could also conclude under these circumstances that plaintiff's request for leave was a "negative factor in the decision to terminate [him]."  <u>Bachelder</u>, 259 F.3d at 1125.  Accordingly, the Court **DENIES** summary judgment on Sandoval's FMLA claim.

### 3.    Wrongful Termination and Retaliation in Violation of Public Policy

Sandoval alleges that he engaged in protected activity when he (1) complained to Zanutto about his unethical acts in violation of FAA and Goodrich rules and regulations, (2) requested medical leave, and (3) advanced the machining idea.  <u>See</u> FAC ¶¶ 12–30. The FAC alleges that adverse employment actions against him violated the public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

policies embodied in the FMLA, the CFRA, and the federal and California False Claims Acts. <u>Id.</u> ¶ 24.[18]

Like Lavin, Sandoval advances for the first time in opposition to the instant summary judgment motion an additional theory based on the TINA  For the same reasons discussed above, the Court **GRANTS** the motion for summary judgment to the extent that it is predicated upon that statute's underlying public policies, which Sandoval did not plead or otherwise raise prior to opposing summary judgment.

Next, Sandoval argues that he was terminated in retaliation for reporting activity (failure to advance the machining idea and related cost savings to the contractor and the government) in violation of the public policies embodied in the federal and California False Claims Acts.  This claim fails as well.  First, although there is evidence that Sandoval repeatedly advocated for the machining idea, there is no evidence that Sandoval reported that Goodrich was engaged in illegal behavior.  The closest to this type of evidence the Court can locate in the record is Sandoval's declaration that he told Zanutto that it was "unethical to fail to advance the cost savings of the idea."  Sandoval Decl. ¶ 30(b).  But even if this allegation of unethical behavior were sufficient to put Goodrich on notice of the alleged type of illegality, for the reasons discussed with regard to Lavin's similar claim, it does not appear that the conduct Sandoval reported—failing to advocate a more efficient process for a product made for a government contractor, where there is no evidence that Goodrich ever lied to the government—implicates the False Claims Acts' policies against presenting false claims to the government.  Therefore, the Court

---

[18]Although defendants offer argument against a wrongful termination claim based on disability, Sandoval (unlike Lavin) does not plead a disability discrimination claim in the operative FAC, and states in connection with his <u>Tameny</u> claims that he "is not making a claim for disability discrimination."  SSGD Conclusions of Law ¶ 10. Therefore, the Court does not separately analyze a <u>Tameny</u> claim based on disability discrimination apart from Sandoval's FMLA/CFRA-related wrongful termination claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL                    'O'

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|----------|-------------------------|------|-------------------|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

**GRANTS** summary judgment on Sandoval's wrongful discharge claim to the extent it is based on his reporting of violations of the False Claim Acts.[19]

To the extent Sandoval attempts to premise his wrongful termination claim on allegations that he was terminated in retaliation for complaining about or exposing Zanutto's violations of Goodrich ethics and conflict of interest violations, that attempt fails. "[T]o sustain a claim of wrongful discharge in violation of fundamental public policy, [a plaintiff] must prove that his dismissal violated a policy that is (1) fundamental, (2) beneficial for the public, and (3) embodied in a statute or constitutional provision." Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1256 (1994) (footnotes omitted). "[A]lleged violations of internal practices that affect only the employer's or employee's interest, and not the general public's interest, will not give rise to tort damages." Green, 19 Cal. 4th at 75. Put differently, "[t]he tort of wrongful discharge is not a vehicle for enforcement of an employer's internal policies." Turner, 7 Cal. 4th at 1257 (holding that plaintiff could not maintain a Tameny claim premised on complaints about his supervisor's violations of his company's conflict of interest provisions and other internal policies). Accordingly, even if Sandoval's criticism of Zanutto's alleged violations of Goodrich rules and policies was a factor in his demotions and termination, that cannot support a claim of termination in violation of public policy. Thus, the Court **GRANTS** summary judgment to the extent Sandoval's wrongful termination claim is based on his reporting of Zanutto's breaches of Goodrich policies.

Finally, Goodrich argues that plaintiff's wrongful termination claim must fail to the extent it is premised on FMLA and CFRA claims, for the same reasons that Goodrich argues those statutory claims fail  But as noted above, the Court finds a triable issue of fact as to whether Sandoval's taking of FMLA leave was a negative factor in his termination. "Discharge in violation of the CFRA has been held, as a matter of law, to constitute wrongful discharge in violation of public policy. As its federal counterpart, violation of the FMLA must also constitute a violation of public policy." Amway Corp., 347 F.3d at 1138 .  Moreover, although Sandoval's statutory CFRA claim is barred by his

---

[19]That four years passed between the beginning of Sandoval's advocacy of the machining idea and his termination further detracts from the force of Sandoval's theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

failure to timely exhaust his administrative remedies, the administrative exhaustion requirement does not apply to tort claims for wrongful discharge in violation of the public policy against discrimination expressed in the FEHA. Rojo v. Kliger, 52 Cal.3d 65, 88 (1990) (in bank). Tameny claims accrue at the time of termination, Romano v. Rockwell Int'l, Inc., 14 Cal. 4th 479, 503 (1996), and are subject to a two-year statute of limitations, see Mathieu v. Norell Corp., 115 Cal. App. 4th 1174, 1189 n.14 (2004); Cal. Code Civ. Proc. § 335.1. Therefore (although the point is perhaps academic because the public policies embodied in the FMLA and CFRA are so similar), the fact that Sandoval's statutory CFRA claim is procedurally barred does not prevent Sandoval from raising a Tameny claim based on violation of the public policies embodied in that statute. Accordingly, the Court **DENIES** the motion for summary judgment on Sandoval's wrongful discharge claims insofar as it is premised on alleged violations of the FMLA and CFRA.

### C.    Punitive Damages

As to both plaintiffs, Goodrich argues that punitive damages are unavailable as a matter of law. The availability of punitive damages under California law is governed by Civil Code section 3294. See Hilliard v. A.H. Robins Co., 148 Cal. App. 3d 374, 392 (1983). "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294(a). Here, plaintiffs seeks to hold employer defendants liable for punitive damages. Under section 3294:

> An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:13-cv-09384-CAS(JEMx) | Date | February 23, 2015 |
|---|---|---|---|
| Title | FERNANDO LAVIN ET AL. V. UNITED TECHNOLOGIES CORPORATION ET AL. | | |

> the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Id. § 3294(b). Goodrich argues that the undisputed evidence shows that Goodrich's employees gave Lavin and Sandoval multiple opportunities to improve their attendance, and that as a result neither plaintiff can make the required showing of oppression, fraud, or malice. But the Court finds that, on the present record, a triable issue of fact exists as to whether an officer or managing agent of the corporation authorized or ratified sufficiently wrongful conduct. Therefore, the Court **DENIES** the motions for summary judgment on the issue of punitive damages.

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** defendants' motions for summary judgment as to both plaintiffs. As to Lavin, the Court **GRANTS** the motion as to all claims against UTC, and as to his wrongful termination claims against Goodrich to the extent they are premised on the public policies embodied in the Truth in Negotiations Act and federal and California False Claims Acts. As to Sandoval, the Court **GRANTS** summary judgment as to the statutory CFRA claim and the wrongful termination claim to the extent it is premised on the Truth in Negotiations Act, federal and California False Claims Acts, and Zanutto's alleged violations of Goodrich policies. The motions are otherwise **DENIED**.

IT IS SO ORDERED.

| | 00 | : | 10 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |